R. William Rutter, Jr. Palm Beach County Attorney West Palm Beach
QUESTION:
Are there any legal constraints which would limit the power of a state agency to enter into an indemnification agreement?
SUMMARY:
In the absence of any general law authorizing or directing such contracts to be made, or authorizing or consenting to a suit against the state on the same, indemnification contracts imposing liability upon the state entered into by a state agency as a county subgrantee of federal funds under the Federal Comprehensive Employment and Training Act of 1973 are nugatory and unenforceable as against the state or its agencies. State agencies are without statutory power to enter into such contracts, and the state is immune from actions thereon.
You state in your letter that Palm Beach County is a `prime sponsor' under the Comprehensive Employment and Training Act of 1973 (29 U.S.C.A. ss. 801-992 [1977]), in which capacity Palm Beach County accepts job opportunity grants from the United States Department of Labor and makes `subgrants' to various legal and governmental entities, including agencies of the state. Your letter further states that Palm Beach County is directly responsible to the United States Department of Labor for the expenditure of all grant funds, and that Palm Beach County exercises no direct control over the programs carried out pursuant to subgrant agreements. As a result, Palm Beach County has incorporated an indemnification clause into the writings which make up each subgrant agreement, the purpose of which is to have each subgrantee indemnify the county, as prime sponsor, from liability of any kind or from damages rising out of acts of the program participants or in instances where federal funds are misused or misspent by the subgrantee. Finally, you advise that several state agency/subgrantees have refused to execute the indemnification agreements, contending that they lack authority to execute, and are prohibited from entering into, such agreements.
To begin with, sovereign immunity may be waived only by general law. See s. 13, Art. X, State Const. (carried over without change from s. 22, Art. III, State Const. 1885), which provides that `[p]rovision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.' Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968); Stateex rel. Davis v. Love, 126 So. 374, 379 (Fla. 1930). In the absence of any such waiver or provision for bringing suit, the state cannot be sued without its consent (except in certain instances not material here). The courts are without jurisdiction over actions against the state for breach of contract. The state is not within the reach of the process of the courts, and agencies of the state are immune from such contract action. e.g., Cone v. Wakulla County, 197 So. 536, 537 (Fla. 1940); Hampton v. State Board of Education, 105 So. 323, 326 (Fla. 1925); Bloxham v. Florida Cent. Pen. R. R., 17 So. 902, 918 (Fla. 1895), aff'd onother grounds sub nom. Florida Cent. Pen. R. R. v. Reynolds,183 U.S. 471 (1902); State ex rel. Division of Administration v. Oliff, 350 So.2d 484, 486 (1 D.C.A. Fla., 1977); Department of Natural Resources v. Circuit Court, 317 So.2d 772, 775 (2 D.C.A. Fla., 1975), aff'd, 339 So.2d 1113 (Fla. 1976). Cf. Davis v. Watson, 318 So.2d 169 (4 D.C.A. Fla., 1975), cert. denied,330 So.2d 16 (Fla. 1976) (power to waive state's immunity vested exclusively in the Legislature) and AGO 075-61 (no state officer, agent, or employee can waive the state's sovereign immunity by contract). See also State ex rel. Florida Dry Cleaning and Laundry Board v. Atkinson, 188 So. 834, 838 (Fla. 1938), in which the court stated that no suit may be maintained against the state or its agencies or instrumentalities `where the interest of the state in such suit is through some contract or property right, except by consent of the State, which consent may only be effectuated by legislative Act' and Hampton v. State Board of Education, supra, in which the court dismissed a suit for specific performance of a contract made by the State Board of Education since there was no statute authorizing or directing the contract to be made on which suit was brought, nor was there any statute authorizing or consenting to such a suit against the state. Thus, it was held in Seaboard Air Line R. Co. v. Sarasota-Fruitville Drainage Dist.,255 F.2d 622, 623-24 (5th Cir.), cert. denied, 358 U.S. 836
(1958), that an indemnification agreement entered into by a drainage district established and created by Florida statute was void, absent an appropriate waiver of sovereign immunity, and of no legal force or effect under Florida law, and that the district, not then being liable for its torts, was therefore without power to make a contract indemnifying others for such torts. Cf. Palm Beach County v. South Florida Conservancy Dist., 170 So. 630, 633
(Fla. 1936), in which the court observed that an injunction sought by the district in order to restrain the county from interfering with the agents of the district in the execution of their official duties should have been granted, inasmuch as these state officers were being arrested and prosecuted by county authorities for acts done by them solely as agents of the district, a state agency, and were entitled to the same immunities from criminal prosecution as their principal, the district or agency of the state.
An examination of the several general laws abrogating sovereign immunity reveals no provision waiving the state's immunity on or relating to contracts of indemnification in general, nor to any type of contract made as a subgrantee of funds under the Federal Comprehensive Employment and Training Act of 1973. Indeed, even assuming the existence of a general law abrogating sovereign immunity as to suits on legislatively authorized indemnification contracts, I have found no law authorizing any of the state agencies mentioned in your letter to bind the state by entering into an indemnification contract as a subgrantee of any federal funds, let alone federal funds disbursed under the Federal Comprehensive Employment and Training Act of 1973. State agencies may exercise only those powers which are expressly granted by statute or which are necessarily implied from such express powers. State v. Atlantic Coast Line R. Co., 47 So. 969, 978-79 (Fla. 1908); State ex rel. Greenberg v. Florida State Board,297 So.2d 628, 636 (1 D.C.A.), cert. dismissed, 300 So.2d 900 (Fla. 1974);see Mitchell v. Maxwell, 2 Fla. 594, 597 (1849), (powers expressly granted by statute are accompanied by implied powers necessary to carry the express powers into effect) and AGO 076-95. If there is any doubt as to the lawful existence of a particular power, such doubt must be resolved against the exercise of that power. State v. Atlantic Coast Line R. Co., supra, at 979; cf. ExParte J.C.H., 17 Fla. 362, 368-69 (1879) (necessary power implied where no doubt as to its necessity nor as to existence of express statutory power). There being no express statutory power here, the state agencies acting as your county's subgrantees are without authority to execute indemnification contracts of the type you have mentioned or to anywise bind the state in that regard. If any of these state agencies did enter into such an indemnification contract, any judgment in a suit thereupon would be of no legal force or effect, not merely because consent thereto has not been duly given nor sovereign immunity duly waived as to such a suit, but also because a claim against the state cannot be paid by a state agency unless a statute exists empowering it to pay such claims, and the Legislature has appropriated funds for such purposes, and the claim has been audited and approved as provided by law. Florida Development Commission v. Dickinson, 229 So.2d 6,8 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1970); AGO 071-28; accord: Attorney General Opinions 077-12 and 076-46.
I am therefore of the opinion that constitutional and legal constraints limiting the power of a state agency to enter into an indemnification agreement imposing contractual liability upon the state do exist, and that, at least with regard to indemnification agreements of the type you have mentioned, these constraints render nugatory and unenforceable as against the state or its agencies any such agreement entered into by a state agency.
Prepared by: Joslyn Wilson, Assistant Attorney General
Dennis J. Wall Legal Research Assistant